UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

M.R.V., a minor, by LORI OATHOUT,

                Plaintiff,          1:15-CV-1009
                                                      (GTS/WBC)
v.

COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS        PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.           BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

       This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

       Currently before the Court, in this Social Security action filed by Lori Oathout on behalf of her minor granddaughter, M.R.V. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are

the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

M.R.V. was born on April 18, 2009.  (T. 99.)  At the time of her application and hearing, she was a "preschooler" as defined in 20 C.F.R. § 416.926a(g)(2).  (T. 99.)  M.R.V.'s alleged disability consists of epilepsy and developmental delays.  (T. 14, 127.)

### B. Procedural History

On November 19, 2012, Plaintiff applied for Supplemental Security Income on M.R.V.'s behalf.  (T. 99.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 26, 2014, Plaintiff appeared before the ALJ, Robert Wright.  (T. 28-44.)  On May 1, 2014, ALJ Wright issued a written decision finding M.R.V. not disabled under the Social Security Act.  (T. 8-27.)  On June 16, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  First, the ALJ found that M.R.V. was a "preschooler" at the time of filing and a "preschooler" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2).  (T. 14.)  Second, the ALJ found that M.R.V. had not engaged in substantial gainful activity since the application date.  (*Id.*)  Third, the ALJ found that

M.R.V. suffered from the severe impairments of epilepsy and developmental delays. (*Id.*)  Fourth, the ALJ found that M.R.V. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings").  (T. 14-17.)  Fifth, the ALJ found that M.R.V. did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings.  (T. 17-23.)  Sixth, and finally, the ALJ concluded M.R.V. had not been disabled, as defined by the Social Security Act, since November 19, 2012, the date her application was filed.  (T. 23.)

## II.  THE PARTIES' BRIEFINGS

### A.  Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes two arguments.  First, Plaintiff argues that substantial evidence in the record did not support the ALJ's finding that M.R.V. had less than marked limitation in the domain of moving about and manipulating objects. (Dkt. No. 11 at 2-3 [Pl.'s Mem. of Law].)  Second, and lastly, Plaintiff argues that substantial evidence in the record did not support the ALJ's finding that M.R.V. had less than marked limitation in the domain of caring for herself.  (*Id.* at 3-4.)

### B.  Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes one argument.  Defendant argues the ALJ's functional equivalence analysis was supported by substantial evidence.  (Dkt. No. 12 at 4-9 [Def.'s Mem. of Law].)

## III.  RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

4

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating

6

objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. ANALYSIS

### A. Moving About and Manipulating Objects

The domain of moving about and manipulating objects considers how well a child is able to move her body from one place to another and how a child moves and manipulated objects. 20 C.F.R. § 416.926a(j). A preschooler, like M.R.V., should be able to walk and run with ease, climb stairs and playground equipment with little supervision, and play more independently. *Id*. at § 416.926a(j)(2)(iii). A preschooler should also be developing fine motor skills, such as completing puzzles easily, stringing

beads, and building with an assortment of blocks. *Id.* at § 416.926a(j)(2)(iii). A preschooler should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners. *Id.* at § 416.926a(j)(2)(iii). The Regulations provide examples of limited functioning in this domain, such as trouble climbing stairs, difficulty with gross motor movements, difficulty with fine motor movements, and poor eye-hand coordination when using a pencil or scissors. *Id.* at § 416.926a(j)(3)(i)-(vi).

The ALJ determined that M.R.V. had less than marked limitation in the domain of moving and manipulating objects. (T. 21.) In making this determination, the ALJ relied on Catalina Alegre, M.D.'s opinion that M.R.V. had no fine or gross motor concern. (*Id.*) The ALJ also relied on occupational therapy reports which indicated that therapy was reinstated due to regression in grasping and find motor skills; however, M.R.V.'s Individual Education Program ("IEP") reported that she was able to demonstrate a static tripod grasp, stabilize a writing surface with prompting, and draw within two inch, one inch and ¾ inch path for vertical and horizontal strokes. (T. 21, 191.)

Plaintiff argues that M.R.V. had marked limitation in the domain of moving about and manipulating objects because the record contained a valid score that is two standard deviations below the mean. (Dkt. No. 11 at 3 [Pl.'s Mem. of Law].)

A child has a "marked" limitation in a domain when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). The Commissioner finds a "marked" limitation when the child has a valid score that is two standard deviations or more below the mean (but less than three standard deviations) on a comprehensive standardized test

8

designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain-related activities is consistent with that score. *Id.* at § 416.926a(e)(2). A child has an "extreme" limitation in a domain when the impairment interferes "very seriously" with the ability to independently initiate, sustain, or complete activities; a standardized test showing three standard deviations below the norm signifies an "extreme" limitation. *Id.* at § 416.926a(e)(3).

An ALJ may not rely on test scores alone when deciding whether a child is disabled. 20 C.F.R. § 416.924a(a)(1)(ii). Rather, he must consider test scores together with other information obtained about the child's functioning, including evidence of classroom performance and the observations of school personnel and others. *Id.* at § 416.926a(e)(4).

First, although some of M.R.V.'s scores in her "Sensory Profile" were two standard deviations below the norm, the "test" in question was not "a comprehensive standardized test designed to measure ability or functioning in that domain" under 20 C.F.R. § 416.926a(e), but a caregiver questionnaire. (T. 166.) Because the scores were not the product of a comprehensive standardized test, the results were not subject to the Regulation at 20 C.F.R. § 416.926a(e).

Even assuming the questionnaire was treated as a comprehensive standardized test in this domain, M.R.V. failed to demonstrate that her "day to day functioning in domain-related activities [was] consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii). The ALJ provided substantial evidence to support his determination that M.R.V. did not have a marked limitation in this domain, which would also serve as evidence that M.R.V.'s day to day functioning in this domain was inconsistent with a

marked limitation. *Miles ex rel. J.M. v. Astrue*, 502 F. App'x 59, 61 (2d Cir. 2012) ("In this vein, the same evidence that provided support for the ALJ's decision that J.M. did not have a marked limitation in the domain of interacting and relating with others serves as a basis for showing that J.M.'s "day-to-day functioning in domain-related activities" was inconsistent with a marked limitation in the domain under 20 C.F.R. § 416.926a(e)(2)(iii).").

Overall, the ALJ's determination that M.R.V. had less than marked limitation in the domain of moving about and manipulating objects was supported by substantial evidence. Plaintiff's pediatrician, Dr. Alegre, stated M.R.V.'s fine and gross manipulations were normal. (T. 318.) M.R.V.'s February 2013 IEP indicated that M.R.V.'s fine and gross motor skills were moderately low; specifically, she fatigued quickly, needed maximum prompting in order to use food utensils, and needed assistance in dressing. (T. 143-144.) However, she could copy a line, complete puzzles, and open and close drawers and doors. (T. 144.) The IEP also indicated that M.R.V. could climb playground equipment, jump over small objects, walk up and down stairs, and throw a ball. (*Id.*) The December 2012 occupational assessment indicated that M.R.V. could stack blocks; string multiple large beads on a thin string; snip with scissors; and cut paper into two pieces, but could not cut on a guide line or cut out shapes. (T. 167.)

Although M.R.V. had some difficulties with fine and gross manipulation, substantial evidence in the record supported the ALJ's determination that M.R.V. had less than marked limitation in this area. M.R.V. was able to perform many of the fine and gross motor activities laid out in the Regulations that a preschool aged child should

10

be able to perform, such as completing puzzles, stringing beads, stacking blocks, climbing stairs, and climbing playground equipment. *See* 20 C.F.R. § 416.926a(j)(2)(iii). Therefore, it is recommended that the ALJ's determination that M.R.V. had less than marked limitation in the domain of moving about and manipulating objects be affirmed.

### B. Caring for Yourself

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). A preschooler, like M.R.V., should: try to do things that she is not fully able to do; develop more confidence in abilities; begin to understand how to control behaviors that are potentially dangerous; and agree easily to do what a caregiver wants, but gradually want to do many things her own way or not at all. SSR 09-7p, 2009 WL 396029, at *5. Examples of limited functioning are: continuing to place non-nutritive or inedible objects into the mouth; often using self-soothing activities that are developmentally regressive; not feeding, dressing, using the toilet, or bath self age-appropriately; engaging in self-injurious behavior; not spontaneously pursuing enjoyable activities; having restrictive mannerisms; and having disturbances in eating or sleeping patters. *Id.*, at *6.

Here, the ALJ determined that M.R.V. had less than marked limitation in the domain of caring for yourself. (T. 22.) In making his determination the ALJ relied on occupational therapy notations which indicated that although M.R.V. was unable to dress herself, she was still in the process of learning this task and she was not yet willing to toilet train. (*Id.*) The ALJ further relied on M.R.V.'s IEP report which indicated

11

that she was able to follow classroom routine, engage in structured activities, make her needs known, and ask adults for help when needed. (T. 22, 191.)

Plaintiff argues that M.R.V. had a marked limitation in this domain based on her 2013 IEP and Psycho-Educational Reports. (Dkt. No. 11 at 3-4 [Pl.'s Mem. of Law].) The February 2013 IEP report noted that, per M.R.V.'s caregiver, she would throw a temper tantrum on a daily basis when not getting her way, and both M.R.V.'s caregiver and teacher reported concerns about M.R.V. being withdrawn, sad, and depressed. (T. 143.) On January 2, 2013 and January 14, 2013, providers with Partnership for Education, evaluated M.R.V. and completed a Psycho-Educational Report. (T. 173-178.) The report noted that M.R.V.'s self-help skills, including feeding, dressing, and toileting, were "strikingly weak." (T. 178.)

To be sure, the record contained notations of M.R.V.'s limitations in her ability to feed, dress, and use the bathroom independently. (T. 176, 178, 333.) However, the record also contained notations that Plaintiff "confidently talked in the classroom, went independently to the bathroom, and without help, sat down during circle time." (T. 327.) On April 1, 2013, M.R.V.'s neurologist noted she was not toilet trained; however noted on September 30, 2013 that she was toilet trained, a "picky but good" eater, and no longer took a bottle. (T. 362, 365.) On September 17, 2012 and July 31, 2013, Dr. Alegre noted Plaintiff could dress without supervision. (T. 343, 346.) The record also indicated that M.R.V. could wipe and blow her nose and demonstrated an understanding of the phone and how to use the TV. (T. 176.)

The record also contained concerns regarding M.R.V.'s tantrums. (T. 143.) During her occupational therapy evaluation the caretaker's concerns were documented;

however, the evaluator noted that M.R.V. did not have a tantrum during the session. (T. 334.)  A Social Work Annual Progress Report dated February 27, 2014, noted that M.R.V. exhibited disruptive and oppositional behavior in the classroom. (T. 206.) However, the report stated that M.R.V. responded to redirection and ignoring. (T. 206-207.)  The report stated that M.R.V.'s more severe behaviors happened "infrequently." (T. 207.)  Teachers reported to the social worker that they did not believe a behavioral program was needed and they were successful in utilizing classroom management strategies. (*Id.*)  Overall, the social worker reported that "[w]hile her behavior has changed her teachers find that it is manageable by giving her intermittent positive attention with redirection and planned ignoring of her problematic behavior." (*Id.*)

Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, substantial evidence in the record, as outlined above, supported the ALJ's determination that M.R.V. had a less than marked limitation in the domain of caring for yourself.  Although the record contained concerns regarding M.R.V.'s ability to independently dress, independently use the bathroom, and tantrums; there was

substantial evidence in the record that M.R.V. could dress and use the bathroom independently and that her tantrums were effectively controlled in the classroom without the need for a behavioral program.  Therefore it is recommended that the ALJ's determination that M.R.V. had less than marked limitation in the ability to care for herself be affirmed.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 9, 2016

William B. Mitchell Carter
U.S. Magistrate Judge